Good morning, Your Honors. Good morning. Let's just take a minute. I don't think other counselors are quite settled yet. All right, counsel. Thank you. May it please the Court, Michelle Ibarra for Appellant AviaGames. I'd like to reserve four minutes for rebuttal. All right. Thank you, counsel. Please watch your time. To affirm here, the Court would have to arrive at three holdings, each of which is contrary to the record and controlling law. First, the Court would have to ignore binding precedent to find that a consumer arbitration agreement with a meaningful opt-out is nevertheless procedurally unconscionable. When faced with the same issue in Muhammad v. Uber, this Court expressly stated that it does not have the authority to ignore circuit court precedent and reverse the district courts holding a procedural unconscionability there. Second, this Court would have to hold that Avia's bellwether provision, which borrows directly from MDL procedures federal courts use to manage mass filings, is nonetheless substantively unconscionable based on speculative delay and chilling, even though the record below shows 4,100 individuals with claims similar to plaintiffs initiated a mass arbitration last year against Avia in AAA, which is now nearly resolved. Clearly, those litigants were not chilled and those claims were not delayed. Finally, the Court would have to hold that the district court did not abuse its discretion when it misapplied Ramirez and Renner Center in declining to sever the bellwether provision. Counsel, if I might follow up on your second point. Under the standard of review, are there any facts that we will have to determine or found by the district court that are clearly erroneous? For example, what the district court said about chilling. Do we have to find that that is clearly erroneous? Your Honor, I don't believe so. I don't see that finding by the district court as a finding of fact. In fact, there were no facts to support it. The district court's conclusion that the bellwether clause would have a chilling effect on hypothetical future litigants was deeply flawed because it relied on a chain of speculative inferences to reach that conclusion. And for example, I'll say to the record at 1 ER 10 to 12, the district court speculated it is, quote, predictable that a player could have a dispute that would apply to others. If the dispute applied to others, the player who arbitrates will likely be subject to the will likely be coordination of claims. There would likely be delay in resolution, which would likely have a chilling effect on others. Those inferences describe circumstances too attenuated to give rise to substantive unconscionability and they're contravened by the mass arbitration that was initiated in parallel with the class action, which I just mentioned. For those reasons, we don't believe the bellwether provision was sufficient to chill claims. And the availability of small claims court and the opt-out provision further rebut the notion that a player's claim would be chilled. I'll point out additionally, Your Honors, the district court's rulings on procedural and substantive unconscionability are directly at odds with each other. On the one hand, the district court found Avia's contract procedurally unconscionable because in the some questions, please. Because your answer on the chilling is the AAA supplementary rules for multiple case filings provide this process arbitrator for these, you call it bellwether, plans call it batching. I'll just stick with your term, bellwether. And the question I have is you rely on the mass arbitration supplementary rules that are amended in effect of April 1st, 2024. But these agreements were agreed to by these two named plaintiffs in 2022 and 2023. So even before this version of these rules existed, and these rules were significantly amended in this April 1, 2024 version. So why would they even apply here? Because at the time these agreements were agreed to, this version didn't exist, right? It preceded it by one to two years. And then there's nothing in the language that says then current version. And you do use that language in the discussion of AAA's consumer arbitration rules. You say, if you are a consumer, then the then current version of the AAA's consumer arbitration rules will apply. But with regard to the supplementary rules for multiple case filings, there's no such language. It's not limited to then current version. So then it means that these plaintiffs agreed to the AAA supplementary rules as they existed at the time they entered into an agreement with Avia Games in 2022 and 2023. So this would be irrelevant. Your Honor, I would disagree with that. I think this Court's holding under Publon is instructive. And there the Court enforced and upheld an arbitration agreement that incorporated by reference a separate body's arbitral rules. It did not have the then current version language.  So then why did you include then current just on the previous page for the AAA's consumer arbitration rules, right? If it was totally irrelevant, extraneous, surplusage to put in then current, then why is it in the previous page? I think that they can still be read consistently, Your Honor. And fundamental fact is that the litigants here agreed to incorporate AAA's rules by reference. And if the Court— Okay, so let me ask you something. When you say then current version of consumer arbitration rules, but you're silent on which version applies of the AAA supplementary rules, you're saying that inherently means you must assume then current version? Yes, Your Honor. And I think the Court— Then why did you bother to put it in for the consumer arbitration rules? If it is understood, implied, implicit, it's totally extraneous and surplusage. I think that it is understood and practically — it's practically understood and commonly adopted for litigants to do it either way or for companies to do that either way. And to mix and match in the same section of the agreement? To mix and match that way? Your Honor, I don't think that — if the Court were to hold that the litigants here were bound by the specific rules in effect at the time every individual consumer agreed to the agreement, that would truly upend private arbitration as we know it. This is a common method of incorporating by reference with the Court, which the Court has blessed multiple times. Well, let me ask you, in Heckman, they said the then current version of AAA's arbitration rules was somewhat oppressive. Your Honor, Heckman was oppressive for a number of reasons that are not present here, the most fundamental of which is that Heckman imposed rules upon consumers that were — the Court found were more akin to class-wide arbitration than bilateral arbitration. And this Court — All right. Well, Heckman cited Harper, a California court of appeal case. It says, under California law, oppression is even more onerous when a clause pegs both the scope and procedure arbitration of the arbitration to rules which might change. So it was specifically on point about rules changing being oppressive. Your Honor, it is common practice for companies to incorporate by reference arbitral providers' rules that are in effect at the time arbitration is initiated. And I would say the Court in Heckman — this Court in Heckman said the process — What about Harper? This is California state law. That's a California court saying this is how our law is interpreted. I will say, at Heckman, this Court held that the processes there were so one-sided that it was unworthy even of the name arbitration. This was one data point in a multitude of findings that the Court found were oppressive and unfair to consumers, including that claimants in non-bellwether cases had no right to participate, no access to the decisions made there, no opportunity to be heard. The rules in Heckman had all of the red flags associated with class-wide arbitration. But that's not an answer to Harper, and this is California state law being interpreted by a California court. Let's just assume that AAA, mass arbitration supplementary rules, apply. So what they say is after all the parties have paid their initiation fees and upon receipt of a party's written notice of a disputed MA-6C issue related to the mass arbitration, then AAA, in its sole discretion, may appoint a process arbitrator. So you have to have one of these 6C issues in order to have a process arbitrator appointed. And if I look at 6C, it's saying, well, the process arbitrator has the authority to determine the following issues, whether the parties have met the filing requirements, disputes regarding payment of administrative fees, the selection process for merits arbitrators, whether the applicable AAA, which applicable AAA rules will govern, whether cases should be closed or proceed in small claims court, the location of the merits hearings, all very much process and procedure. So tell me which one, say, unconscionability, which is an affirmative defense, is decided by a process arbitrator. The process — the rules governing the authority of the process arbitrator give the process arbitrator the authority to rule on their own jurisdiction. And this Court held in Oracle v. Myriad that that is sufficient to delegate gateway issues or arbitrability to an arbitrator. I will also point out, Your Honor, that — Right. But none of those cases involve process arbitrators, right? They involve before the segregation of process arbitrators and merits arbitrators, correct? All of those cases, none of them are talking about a process arbitrator, correct? That's correct. However, I will also point out that the rules that you just cited also give the process arbitrator the authority to decide if conditions precedent have been met in order to initiate arbitration. That is a fundamental issue of Congress. Is an affirmative defense a conditioned precedent? Let's look at that language. Disputes over any applicable conditions precedent and, if applicable, how the parties can meet the conditions precedent and how to proceed if they do not. So it talks about how the parties can meet the conditions precedent. How do you meet an unconscionability affirmative defense? How do you cure that unconscionability affirmative defense as a conditioned precedent? Your Honor, I see I'm almost out of time. Oh, but I'd like an answer to the question. I haven't asked any questions yet, so.  Yes, I will. The conditions — the process arbitrator's role in determining whether conditions precedent have been met in order to proceed, that's a fundamental issue of contract interpretation. The process arbitrator's ability to decide whether there have — gateway issues of arbitrability, to decide those issues, that is under a separate rule, under the AAA's rules, vesting the process arbitrator with that authority. I'll also point it out, this Court recently held in Jones v. Starrs that it is not the business of the Federal courts to second-guess an independent arbitration provider's applications of its own rules. And finally, the process arbitrator's decisions are not unreviewable. Even within the AAA, they can be reviewed for abuse of discretion by the merits arbitrator, and even more fundamentally, in the first place, a party who wishes to avoid this entire process or arbitration altogether can opt out or pursue their claims in small claims court. So, counsel, let me ask you this. That's one of the fundamental differences between a bellwether trial and MDL litigation. And here, it's that once we compel arbitration, the courts lose control of the process because we have very little ability to overturn an arbitrator's decision. And I think that's what went into the chilling effect part of the district court's decision. So, this is not truly a bellwether process, is it, as it's contemplated in the MDL situation? Your Honor, of course not, because we're in arbitration and not Federal court. Exactly. And part of the MDL process is that the courts are able to marshal the cases through and control the pace at which the cases are decided. And if it becomes a matter of delay, then the courts are able to deal with that. We don't have that same oversight if a bellwether process were decided to be implemented here. So, I have a concern about that, whether or not it's actually the equivalent of a bellwether process. Your Honor, I see I'm almost out of time. May I have another minute to answer your question?  You may ask a question. Don't worry. We'll give you time for rebuttal. Thank you. Sure. The agreement that the parties have made here is to litigate an arbitration. And AAA has a due process protocol that guards against delay. There are multiple backstops against delay. Sure. This is what I said is obvious bellwether provision. It borrows from MDL procedures. It's good for plaintiffs and it's good for businesses because it leads to fairer and faster, more efficient resolution. I don't see how the delay is actually accounted for, how prevention of delay is built into the process. I don't see that part. Okay. Let me try it another way. The rules under the AAA's mass filings rules that allows plaintiffs to consolidate their filings to receive coordinated discovery from AVIA and the bellwether cases. The bellwether cases proceed first. They're a limited number. They're a limited number. They are a limited number. Yes, Your Honor. But the bellwether cases proceed first. 120 days into this proceeding, there is a mediation, a global mediation. And just like an MDL, the MDL is there to make things more efficient for the parties and minimize burdens on the courts. But once the cases that are centralized before the MDL court are done with pretrial discovery, they are often remanded in waves or batches back to the originating courts for bellwether trials. And that often results in global settlements of all the cases that have been centralized. In fact, as the Chamber of Commerce helpfully pointed out in its amicus brief, 97 percent of cases that are centralized before MDL courts are never returned to the originating courts. 72 percent of those cases settle. The idea here is similar, and that is exactly what we've seen happen in practice with the kind law arbitration that proceeded in parallel with this class action. That is nearly over. The parties are in the process of resolving it through a coordinated settlement. And that's exactly how we expect the bellwether to work here. I see I'm on read. There are no additional questions, it appears. But we'll give you a couple questions, if I could. First of all, under California law, should we assume that the ICDR and the process arbitrator will attempt to move the process along and address delay? Absolutely, Your Honor. Yes, yes, absolutely. And number two, if you win on substantive unconscionability on the delegation clause, does that end really every other issue? Because then everything else is decided by the arbitrator. Yes, Your Honor. The delegation clause is not unconscionable, and that should be enforced. And I would like, I can do this in rebuttal, I would like the opportunity to address severability. But yes. But counsel, OK, you said that the prevention of delay would be assured. But what if that doesn't happen? What is the redress for the plaintiffs if the delay actually happens and the cases are delayed and the statute of limitations is running? Can you waive the statute of limitations for them? The statute of limitations is told for plaintiffs that are not in the bellwether. Who says? Obvious terms of service say that. But does the court have to accept that? It's a matter of contract. That is the contract that the parties have agreed to. Yes, Your Honor. But the court does not, I mean, if the statute of limitations has run, does the court have to accept the contract provision that says it hasn't run? As a matter of law, would the court have to accept that? Your Honor, we're talking about an arbitration. The AAA has accepted that or will accept that. Yeah, so AAA will accept it and then a court wouldn't have to be involved. That's what you're saying.  So what would be the redress if the delay is inordinate in a plaintiff's view? What would their avenue of relief be? So there are a number of safeguards against delay. One is the due process protocol. If all of those safeguards fail, what is the redress? The redress is that the arbitrator, the delegation clause in an obvious contract, authorizes the arbitrator to grant any remedy or relief that would otherwise be available to the court. And that necessarily includes severing the bellwether provision if delay is actually happening. The arbitrator has that authority just like the court has that authority here. And that would allow the litigant to proceed outside the bellwether process entirely. Has this process been endorsed by any court previously? It has not been. It has not not been endorsed, Your Honor. This is a relatively, I mean, the bellwether process. So has this matter been litigated, this provision? Has it been litigated anywhere else? Not to my knowledge, Your Honor. Go ahead, Judge. No, thank you. All right. Thank you, counsel. We'll give you two minutes for rebuttal. Thank you. Good morning, counsel. Good morning. May it please the Court. My name is Spencer Cox on behalf of Appalese Andrew Pendolfi and Mandy Shawcroft. This case, which was alluded to but we haven't talked about, is about the standard of review. The decision to deny the motion, reviewed de novo, but the factual findings are reviewed for clear error, and the decision to sever is reviewed for abuse of discretion, excuse me, of discretion. It comes from Lim, Ramirez, Ronderos, a number of other cases. That standard controls here because this is about the level of deference that should be who reviewing the facts and circumstances in the record here, and by the way, that record doesn't include anything about what has or hasn't happened in the kind law arbitration, and it doesn't include anything about how whether or whether or not the district court's ruling here affected or didn't affect that arbitration, which is going on right now. It's about how this Court reviewed that record, found that the delay provision, which meters out and batches claims in groups of 20 sequentially, which is important. You have any cases considering prior chilling effects in the context of undue delay or this kind of batching bellwether? In the context of undue delay, yes, Your Honor. Well, for batching, one case would be McClellan from the same court in the northern district, but just in terms of delay generally, there's Swain, there's Sika, there's Binion. Those are all, well, Sika in particular and Swain talk about delay, if you have to do a trial de novo or second appeal. The defendants say, oh, those are all fee allocation provision cases in employment arbitrations. Do you agree with that, what they say? I don't agree. I agree that that's what they say. I don't agree that that is correct. Why? Well, for instance, Swain is a consumer contract. Sika is a doctor-patient contract. Parada is an investment contract. Negrompa was a form selection clause in a franchisee-franchisor contract. Chilling effects are widely considered all over the law. As the district court noted, they're in First Amendment law. They're considered when discovery requests regarding immigration status under Rule 54D for allocation of cost. They are everywhere in the law, leading to the maximum, of course, that justice delayed is justice denied. They are certainly not limited to employment context or cost-shifting or cost-playing provisions, whether you look at California law only or the law generally. You think the district court should have considered the opt-out clause and the small claims court carve-out in thinking about Chilling? In thinking about Chilling? No. The district court did consider the opt-out clause in finding that the contract was not adhesive. Opt-out clauses under California precedent go to adhesiveness and oppression, period. The district court did not comment on the opt-out or, excuse me, on the small claims because that was not an argument that was raised more than in passing in any of the numerous briefs. It would not have made a difference. Small claims courts have carve-outs. They don't allow you to bring claims over a certain size. In many small claims courts, you can't have counsel. You may or may not get discovery. In many States, you can't get injunctive. There are a number of features and facets of small claims courts that make them an unacceptable substitute, and to the extent that it's either accept this delay, which quite literally, with no hyperbole, can cost you a hundred years to have your claim heard. Well, counsel, what's your response to opposing counsel's, excuse me, representation that there are safeguards to prevent that from happening? There aren't safeguards to prevent that from happening. That is my response. Parada, Fischer, others stand for the California courts, analyzing California State law, stand for the proposition that the arbitration tribunal has the authority to act reasonably when it's within their discretion. But these terms don't give them that discretion. These terms require 20 at a time. There is a global mediation, but it runs concurrently, and if it doesn't work, there is no redress. There is no backstop. There is nothing that a claimant can do to get to the front of the line or to get heard. It is no excuse to say that a provision is not unconscionable on the basis that it may not be enforced. Under Parada, the clause is enforced as written. The drafter is saddled with provision that it drafted, which is why — How would the process arbitrator address any delay? I don't know, Your Honor. The terms expressly require that only 20 can be heard at a time. They must each have an individual arbitrator. And only once every one of those 20 has been heard and resolved do we then go on and select a batch of another 20. And that repeats, and it repeats, and it repeats. Opposing counsel says that the arbitrators have inherent discretion to rectify any undue delay. What would that mechanism be based on your understanding of the arbitration clause, delegation clause? I don't have an understanding that they would have any ability to rectify the delay, Your Honor. It couldn't undo the contract that the users entered into with these terms of service, correct? That's right. The terms of service specify the terms that must be effectuated by the arbitral contributor. Now, let me ask you a question. When I asked counsel what 6MA-6C issue triggered the authority to appoint a process arbitrator, ABA Games counsel cited only 6C-2, the conditions precedent, and 6D, the power to rule on their own jurisdiction. Did not raise 6C-11, but I want you to address 6C-11. It says any other non-merits issues affecting case administration arising out of the nature of the mass arbitration that the process arbitrator determines is appropriate for determination. I want you to break that down for me. Non-merits affecting case administration arising out of the nature of the mass arbitration.  Do any of those apply here? No, they do not. To this unconscionability issue? They do not.  Unconscionability is a merits defense. It is an affirmative defense. It is certainly not a non-merits issue. It is not an affirmative defense. It is also not an administrative issue for a court or an arbitrator. I think we're familiar with what administration is. case schedules, whatnot. They are not the determination of whether an affirmative defense like limitations or unconscionability applies. And then the last one you wanted me to address, Your Honor. Arising out of the nature of the mass arbitration. Sure. Unconscionability arises out of the nature of the contract and the circumstances and context surrounding with which it was entered into. Unconscionability exists whether there is a mass arbitration or not. It does not arise simply because claims have been coordinated for a mass proceeding. And a statute of limitations wouldn't arise from the nature of the mass arbitration, correct? That's correct. That's completely independent from that, from administration. It is also a non-merits issue. Now, let me ask. I think counsel raises good points that Heckman is distinguishable. I mean, here the plans were given notice through the pop-up boxes in the apps that the terms of service had been updated. There were two boxes, one click to read, one to agree. And that is not the case in Heckman where, you know, Ticketmaster was saying, oh, if you browse the web, you don't even buy any tickets. You're agreeing to our changing terms of service. So why should we follow Heckman here? I would disagree with that a little bit, Your Honor, in that one of the features of Heckman was that it purportedly bounds you if you simply use the website. These terms also do that. You can click through the sign-in wrap and whatnot, but they also say by accessing or agreeing to use the site in any way or use the services, you agree. That's the same purportedness to be bound that was found in Heckman. Heckman is also similar in that in both cases, the terms incorporated these rules that are ever-changing and extremely difficult to sort out and figure out which one applies to you. Just like I think was discussed, these mass ARB rules that are used to defend the provision and give the so-called escape hatches or redress, they didn't even exist when the case was filed, much less when the contract was entered into. How come the 2022 or 2023 version of these mass arbitration supplemented rules aren't in the record? It's only this April 1, 2024. Your Honor, I don't have a good answer for that. Those were the rules that... So Avia Games never relied on the mass arbitration supplemental rules that existed at the time that these two named plaintiffs agreed to the terms of service. They never relied on those versions? In the briefing, no, Your Honor. Not that I'm aware of and certainly not that I recall. The rules that preceded those had a different name. They were the supplementary rules for multiple case filings or something. Well, I mean, I think that is this... Well, anyway. Well, what about the argument that you have to assume that any time any AAA rule is incorporated, it's a then-current version? I think that whichever way you come out on that argument, it still goes to the procedural unconscionability of incorporating rules that change and that are difficult to follow. It's difficult for us. You can only imagine how hard it would be for a consumer or a layperson trying to understand exactly what it is that they're agreeing to. And that adds to the procedural unconscionability, which is what Heckman stands for and how it's like in this case. Did the previous versions... Well, they're not in the record, so I won't ask. But let me ask you another question. Do you think these 24 mass arbitration supplementary rules apply... ...to a 2022 or 2023 terms of service agreement? I do not. I think under PIRATA, the California... Which is an intermediate appellate court decision, I will note. I think that under PIRATA, that the drafter is bound by the terms as they existed when they were written. And I will add that even if they did apply, argue into, I would disagree with the obvious position that a process arbitrator is empowered to decide arbitrability. Not just for the reasons we discussed, but also because these terms themselves state that a single arbitrator cannot, and I'll quote, preside over any proceeding involving more than one individual. So either the process arbitrator is going to decide arbitrability and violate that, which they don't have the power to do, or if a process arbitrator is going to do it, now we have one arbitrator making one decision sequentially for every claimant. And that only worsens the delay here. So to point the finger and say a process arbitrator will solve this for us is not the right answer. How can the arbitration agreement be procedurally unconscionable when the second sentence in the very first paragraph says if you do not agree to these terms, including the mandatory arbitration provision and class action waiver in section 15, do not access or use our products or services? That's the second sentence, it's in all caps. It's in the very first paragraph under the date. That's right. No one thing is dispositive when we look at surprise. It requires a factual determination considering the context and all of the circumstances of the presentation. So these terms were presented behind pop-ups. You had to go through them. It's not a scroll wrap, not a click wrap, it's a sign-in wrap. If you go there, you do see that on the first paragraph. But you're not saying all of these terms were required to be in the pop-up, are you? No, absolutely not. But isn't that what the district court sort of held, that these changes should have been more clearly in the pop-up? No, Your Honor, absolutely not. What the district court said is, if you're going to put an arbitration agreement at the very end of an eight-point font, multi-page, extremely long terms of service, then we get into the range of, hey, this is in a long prolix form. We start to analyze the surprise. Is there any other thing that was done to highlight it or bring your attention to it? Of the many things they could have done but did not, it could have been noted in the pop-up what the changes were, the significant changes, at least. It doesn't have to, but that's one way they could have addressed the surprise. It could have had your attention called to it. They didn't have to put it in the terms of service at all. It could be a separate agreement. As the district court found at hearing, there's a number of ways you can reduce the surprise inherent in a prolix form. None of them were effectuated here. If we rule for a via on the delegation clause and hold that it's not substantively unconscionable, does that end every other issue and that's really for the arbitrator? Yes, Your Honor, I would agree with that because that was the only substantively unconscionable clause the district court relied on in finding the delegation clause itself unconscionable. All right, and you started with standard of review. That's the very first question I ask opposing counsel because I'm trying to get an understanding of whether there are factual findings that we have to say are clearly erroneous. Is it your view that the findings regarding chilling are factual findings that do not get reversed unless they're clearly erroneous? I think I have to back up to walk through that, Your Honor. The factual findings are the circumstances. AVIA has millions of users. The record establishes that thousands have already brought claims. The district court applying the expressed terms to those facts finds that there is likely to be substantial extreme delay that is unreasonably favorable to AVIA. Based on that delay, I think it is a reasonable inference that the district court is allowed to make from those factual findings that that delay chills claimants, potential claimants. And that's as established in other cases. Your Honor, with your permission, may I have another minute or two? You've exceeded your time. Are there any questions? I think we understand your argument, counsel. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. One thing I don't want to get lost here is that AVIA's adoption of the AAA mass arbitration rules and the bellwether provision, those were done in response to a real-world problem that this court recognized recently in Jones v. Starrs, and that's the problem of abusive tactics with mass arbitrations. This court recognized that this court Can I ask you, is statute of limitations a merits issue? I don't believe so, Your Honor. You think it's a procedural issue? What authority do you have for that, that that's not a merits issue? Your Honor, I don't have that at my fingertips. Okay, but your position is, as a legal matter, statute of limitations is just procedure. It's not, and it's just process. It's not merits. Your Honor, I'm not sure I understand the direction of your question here. As I said before, the statute of limitations is told for non-bellwether litigants in AVIA's bellwether provision. But more importantly, I'd say, the parties here, the intent was to contract for a more efficient arrangement. This is not the case of an employer... But what about arbitrability, unconscionability? Are those merits issues? Those are merits issues, Your Honor. Okay, so you are not relying on mass MA6C11. You're not relying on that for the authority for the process arbitration to decide unconscionability. Because when I asked you what you're relying on, you said 6C2 and D, the jurisdiction and the condition precedent, you didn't rely on this non-merits issue affecting case administration. You don't think that's the basis for the process arbitrator's authority here, do you? I think that the fundamental basis is subsection D and the court's decision in Oracle v. Myriad and others following it. Okay, so you're not relying on 6C11 correct? I think 6C11 offers additional support for that. Okay, but you just said it's only non-merits issues affecting case administration arising out of the nature of the mass arbitration. So you're telling me that unconscionability, arbitrability, statute of limitations, one year v. three v. four, that's non-merits? I think unconscionability, arbitrability squarely fall under subsection D. This court has interpreted that exact same language. I'm asking about 11. I just want to see if you're using 11 as the basis for process arbitrators. It doesn't sound like it. When I asked you the question earlier, you didn't cite to this provision. I think that offers an additional basis, but that's not where I would say unconscionability and gateway issues of arbitrability come in, Your Honor. I think that is squarely under the purview of section D. It's not under 11, correct?  Your Honor, I want to just make the distinction here. This is not the case of an employer sticking an obviously illegal term in a contract in order to chill the exercise of rights. Avia proposed the Bellwether provision in good faith to respond to a real world commercial need. Mass arbitration abusive tactics threaten not just the nation's business community as the Chamber's brief, amicus brief helpfully pointed out, but also to the continued viability of individual arbitration, which has historically been fair, fast, and less expensive for plaintiffs and litigants. Even if this Court disagrees that Avia's Bellwether process is the right one, it cannot and should not conclude on this record that the proposal was in bad faith and of a piece with Heckman. If Avia got it wrong, the provision should be severed under Ramirez, and the Court has the authority to do that. Thank you to both counsel for your helpful arguments. The case is submitted for a decision by the Court that completes our calendar for the day and for the week. We are adjourned.
judges: RAWLINSON, KOH, Fitzwater